Henry Epstein, J.
The motion for preliminary injunction is denied. Plaintiffs are individuals who engaged in stock transactions which may be said to constitute a form of legalized gambling through the medium of the American Stock Exchange, an institution authorized to conduct such transactions. Plaintiffs sold shares of E. L. Bruce Company “short” through broker members of the Exchange. By this is meant that plaintiffs sold shares they did not own, and which their respective brokers would have to “ borrow ” to make the deliveries to the purchasers. These sales took place mainly in April and May *1078 of this year at an average price of about $42 per share. The same shares had sold in March, 1958 at less than $17 per share. By June 12, 1958 the stock had risen to an offering price of $77 a share. The total Bruce stock issued was 314,600 shares and the short position on June 12 was about 15,529 shares or less than 5%. On June 12 the trading was suspended by the Committee on Securities of the American Stock Exchange. That suspension is still effective. The Committee on Floor Transactions on June 16, 1958 deferred until further notice the closing out of contracts “ off the Exchange ”. This was by virtue of the discretion given under rule 783 of the Exchange: “ The closing of a contract may be deferred by order of any member of the Committee on Floor Transactions, whenever in his opinion a fair market in which to close the contract does not exist. ’ ’
When, by August 15, 1958 the ‘ short ’ ’ position in the Bruce stock had been reduced from 15,529 shares to about 6,440 shares, the directive of June 16 was rescinded. The quotation the day previous to this order was $75 bid, $80 asked. WEen, however, the price had apparently advanced to the level of $162 bid, $200 asked, by August 18, 1958, the committee reissued the rule 783 directive to the Exchange’s members. By September 4, 1958 the short position had further shrunk to between 3,000 and 3,500 shares or about 1% of the issued and outstanding shares. Also the facts reveal over-the-counter transactions on September 5 of some 696 shares at $148 per share. The Exchange Committee on Floor Transactions then rescinded the ruling deferring the closing out of contracts “ off the Exchange ”, effective September 5 at noon. It is this order which has hastened the matter now before this court.
No charge of fraud or conscious misconduct is made; no sharp practice by the Exchange is observed; no profit by the defendants is possible or claimed. It is an unfortunate situation, but one not wholly unknown to the market place in cases where those who gamble may lose by reason of a battle for control of the company whose stock has been the object of their speculation. The Exchange defendant has established rules and regulations. Its officers and committees apply those rules and regulations. This court cannot under the circumstances here revealed substitute its own view (even if so inclined) for that of the Exchange’s own officers. The evidence does not reveal a “ corner ” of the Bruce stock in this situation. The Exchange’s officers have not been able to make such a determination. Short of a patent fraud or obvious wrongful application of its constitution or regulations, the courts should leave *1079 such associations (stock exchanges) to apply their own regulations. (Cohen v. Thomas, 209 N. Y. 407, 411.)
The intervening party is Edward M. Gilbert, president of Rhodes Hardwood Flooring Corporation, who is seeking to control the Bruce Company by acquisition of controlling interest of the Bruce stock. He claims to have invested or committed some $5,000,000 in acquiring said Bruce stock. The short sales, less than 4,000 shares as yet uncovered, may be the difference between success or failure in Gilbert’s obtaining control of the Bruce Company in the impending shareholders’ meeting. The record date is September 18, 1958 for the meeting on October 28, 1958. Plaintiffs could have covered their short sales at prices between June and August varying from $59 to $84 a share. At certain times the price did soar above $100 a share. But plaintiffs have apparently waited for a more favorable market. The intervenor Gilbert cannot be charged with plaintiffs’ losses or troubles. He is seeking to control a competitor in business through purchase on the market of his competition’s stock. Nor can the defendant Exchange be charged with anything more than a possible error in judgment, which is within the scope of the powers entrusted to its officers. Plaintiffs gambled and lost. Their plight may be unfortunate but it is not one that should move the court’s conscience when weighed against the merits of the intervenor Gilbert or the authorized action of defendant American Stock Exchange.
Order signed.